## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Case No. _____** |
| | ) | |
| **APPROXIMATELY TWO** | ) | |
| **PIT BULL-TYPE DOGS SEIZED** | ) | |
| **FROM MANY, LOUISIANA** | ) | |
| | ) | |
| **Defendants.** | ) | |

### VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

COMES NOW the United States of America, by and through the undersigned Assistant United States Attorney, and brings this Verified Complaint for Civil Forfeiture *in Rem*, with the following allegations:

### NATURE OF THE ACTION AND BASIS FOR FORFEITURE

1.      This is a civil action *in rem* for the forfeiture of two pit bull-type dogs (hereinafter, "Defendant Dogs") that were involved in a violation of the animal fighting venture prohibition section of the Animal Welfare Act, 7 U.S.C. § 2156.

### THE DEFENDANTS *IN REM*

2.      The defendants *in rem* are approximately two pit bull-type dogs seized on or about January 20, 2022, from property located at 178 CD Carroll Road, Many, Louisiana pursuant to a federal search warrant.

3.      The Defendant Dogs are generally described as follows:

      i.      USM-732: one "blue" (gray) and white male pit bull type dog

       ii.    USM-733: one "blue" (gray) and white male pit bull type dog

4.    The Defendant Dogs were seized by the FBI and U.S. Marshals Service and are being cared for by a contractor, K2 Solutions, who is providing the dogs with access to veterinary and rehabilitation services.

5.    The Defendant Dogs are subject to forfeiture to the United States pursuant to 7 U.S.C. § 2156(e), as animals involved in a violation of the federal animal fighting venture prohibition codified at 7 U.S.C. § 2156.

## JURISDICTION AND VENUE

6.    Plaintiff, the United States of America, brings this *in rem* action in its own right and pursuant to its authority to forfeit the Defendant Dogs.  Pursuant to 28 U.S.C. § 1345, this Court has jurisdiction over an action commenced by the United States.  Additionally, pursuant to 28 U.S.C. § 1355(a), this Court has jurisdiction over any action or proceeding for forfeiture.

7.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1355(b) and 1395 because the acts and omissions giving rise to forfeiture occurred in this district and because the Defendant Dogs were found in this district.

## BASIS FOR FORFEITURE

8.    The federal Animal Welfare Act, 7 U.S.C. § 2131, *et seq.*, defines "animal fighting venture" as "any event, in or affecting interstate or foreign commerce, that involves a fight conducted or to be conducted between at least 2 animals for purposes of sport, wagering, or entertainment."  7 U.S.C. § 2156(f)(1).  It is illegal to sponsor or exhibit an animal in an animal fighting venture.  7 U.S.C. § 2156(a)(1).  It is also

illegal to sell, buy, possess, train, transport, deliver, or receive an animal intended for use in an animal fighting venture.  7 U.S.C. § 2156(b).

9.     The Animal Welfare Act provides that "[a] warrant to search for and seize any animal which there is probable cause to believe was involved in any violation of this section may be issued by any judge of the United States or of a State court of record or by a United States magistrate judge within the district wherein the animal sought is located." 7 U.S.C. § 2156(e).  Animals "seized under such a warrant shall be held by the United States Marshal or other authorized person pending disposition thereof by the court in accordance with this subsection." *Id.*  In addition, "[n]ecessary care including veterinary treatment shall be provided while the animals are so held in custody." *Id.*

10.     The statute also contemplates forfeiture of the seized animals. Specifically,

> [a]ny animal involved in any violation of this section shall be liable to be proceeded against and forfeited to the United States at any time on complaint filed in any United States district court or other court of the United States for any jurisdiction in which the animal is found and upon a judgment of forfeiture shall be disposed of by sale for lawful purposes or by other humane means, as the court may direct.

*Id.* The costs incurred in caring for animals seized and forfeited under this section "shall be recoverable from the owner of the animals (1) if he appears in such forfeiture proceeding, or (2) in a separate civil action brought in the jurisdiction in which the owner is found, or transacts business." *Id.*

11.    As explained below, the Defendant Dogs are animals "involved in violation[s]" of 7 U.S.C. § 2156 and are therefore subject to forfeiture pursuant to 7 U.S.C. § 2156.

## BACKGROUND

12.    Dog fighting is a violent contest in which two dogs that are bred and conditioned for fighting are released by their owners or handlers in a controlled environment to attack each other and fight for purposes of entertainment or gambling.  Fights usually end when one dog withdraws, when a handler "picks up" his dog and forfeits the match, or when one or both dogs die.

13.    Pit bull-type dogs are the most prevalent type of dogs used in dog fighting ventures. This is due to their short coat, compact muscular build, and the aggressive temperament that some exhibit toward other dogs.

14.    Dog fighters select the strongest, most capable fighting dogs and selectively breed, sell, and fight those dogs that display particular traits.

15.    Some of these traits are: (1) "gameness" or aggressiveness and propensity to fight other dogs; (2) a willingness to continue fighting another dog despite traumatic and/or mortal injury; and (3) cardiovascular endurance to continue fighting for long periods of time and through fatigue and injury.

16.    Dog fighters fight dogs with a goal of obtaining "Champion" or "Grand Champion" status for their dogs, which is achieved by winning three or five fights, respectively.

17.     Dog fighters can generate substantial income from gambling on dog fights and from the sale and breeding of animals with a fighting lineage.

18.     It is a common practice for those involved in training and exhibiting fighting dogs to possess several dogs at one time.  This practice is followed for several reasons.  Dog fighters maintain a stock of dogs at different weights and both sexes because in dog fights, dogs are matched against other dogs to within a pound of the same weight against dogs of the same sex.  Maintaining a stock of several dogs thus increases the odds of owning a dog whose weight meets the requirements for a match being solicited by an opponent.

19.     Further, dog fighters must possess an inventory of dogs because dogs often die or are badly injured during fights.  Dogs that lose fights or fail to show "gameness" are often killed.  It is not uncommon for dogs that lose matches to be killed in cruel, torturous, and inhumane ways as punishment.

20.     Dog fighters also maintain multiple dogs in order to selectively breed, sell, and fight dogs displaying certain traits or to otherwise advance a particular dog fighting bloodline.  Possessing multiple dogs increases the prospects of owning a dog who will become a Champion or Grand Champion.  Dog fighters also routinely test and evaluate their dogs to determine those that exhibit aggressive behavior, including against their own dogs.

21.     Dog fighters typically do not start setting up matches for a dog until the dog reaches at least eighteen months to two years of age. Until then, dog fighters may test the dog out by "rolling" it or having the dog participate in short fights to assess

the dog's demeanor. Thus, it is common for dog fighters to possess young dogs who are in the process of being trained to fight and, thus, do not yet have much, if any, scarring.

22.     One sign of dog fighting is the presence of pit bull-type dogs on heavy or excessive chains or housed individually in pens or crates.  Persons engaged in dog fighting take steps to restrain or isolate dogs used for fighting from one another to prevent them from fighting at unintended times.  They may also keep younger dogs they intend to use for fighting out of reach of other dogs to discourage normal socialization. Heavy chains are used to develop neck strength in dogs used for fighting.

## FACTS

23.     On January 19, 2022, Special Agents with the Federal Bureau of Investigation (FBI) were notified by a Special Agent of the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF), that he had obtained a federal search and seizure warrant that same day for property owned by Charles Akin and related to his illegal possession of firearms.

24.     In preparation of the execution of that warrant, ATF agents flew a drone over the property to plan for the execution of their warrant. This drone was equipped with a video camera that showed ATF Special Agents the exterior of the property, including its backyard. In this backyard area, ATF Special Agents observed approximately 15 pit bull-type dogs.

25.     Each pit bull-type dog observed was attached to a chain and had access to a small plywood structure that was surrounded by a circular path or "chain path." The chain paths appeared to be worn dirt that the dogs would traverse around their plywood structures due to the restrictions of their chains, which would prevent contact with other nearby dogs. The dogs and their structures were separated but appeared to be positioned right outside of reach from each other in close proximity.

26.     Accordingly, on January 20, 2022, FBI Special Agents accompanied the ATF agents during the execution of their warrant on the property of Charles Akins located at 178 CD Carroll Road, Many, LA 71449.

27.     Upon entering the exterior of the property, in the backyard, FBI Special Agents observed in plain view 15 pit bull-type dogs attached to short metal chains near plywood structures that were consistent with the abovementioned descriptions.

28.     These federal agents also observed in plain view a homemade treadmill with a small, dog-sized running belt made of wooden slats. This treadmill was consistent with the appearance of treadmills that are commonly used by animal fighters to train their dogs for animal fighting ventures.

29.     In another nearby shed, federal agents observed a very large toolbox containing a large metal spring device, metal scale, and animal medication, such as deworming solutions and animal wound treatment solutions. Metal spring devices are commonly used by animal fighters to train and strengthen their dogs' bite. Metal scales are commonly used by animal fighters to weigh fighting dogs as they train and prepare the dogs for upcoming fights. Animal medications, including deworming and

wound treatment solutions, are commonly used by animal fighters to treat their fighting dogs because seeking treatment from veterinarian clinics for their fighting dogs' wounds and care can expose their illegal animal fighting activities.

30.    Federal agents also observed several heavy metal chains and metal stakes, a dog-breeding device, and pieces of carpet. Heavy metal chains and metal stakes are commonly used by animal fighters to attach to their fighting dogs and provide strength conditioning to their fighting dogs' necks. Dog-breeding devices are commonly used by animal fighters to breed and maintain their fighting dogs' pedigrees and bloodlines. Pieces of carpet are commonly used by animal fighters to line fighting pits and provide traction for their fighting dogs.

31.    Inside the dwelling on the property where the dogs were located, federal agents observed a safe containing firearms and books on pit bull-type dogs, including for example the Pitbull Bible, Sporting Dog Journals, Dogs, Velvet, and Steele, and American Pitbull Terrier, and photographs of pit bull-type dogs. A plastic tub found inside of a closet contained many tens or hundreds of underground dogfighting and cockfighting magazines, including Sporting Dog Journal and Game Cock Journal. These magazines are commonly subscribed to and read by animal fighters to learn about animal fights and connect with the animal fighting community.

32.    In the backyard, there were several chicken coops or pens primarily containing roosters, along with metal spurs and needles, which animal fighters commonly use in cockfighting by binding them to the roosters' feet.

33.     Based on these observations, that same day, FBI Special Agents requested another search warrant related to the suspected animal fighting activity on the property in order to search and/or seize evidence of same.

34.     Charles Akins consented to this search of his property.

35.     During the search of the property, the FBI found and seized several items as potential evidence of dog fighting in violation of 7 U.S.C. §2156 including, 15 pit bull type dogs, 1 dog treadmill, various photographs, various dog books and sport journals, a metal scale, a metal spring device, a dog chain[1], and carpet (as described above).

36.     All of the adult pit bull type dogs were housed individually so that they could not reach any other adult dog. The dogs were all individually secured by heavy chains.

37.     The dogs appeared to be permanently housed outside. None of the dogs appeared to have been bathed or cleaned in a significant period of time. All of the dogs had inadequate shelter of only a 50-gallon plastic drum.

38.     The dogs had access to water, but the water was filthy and brown. None of the dogs had access to food.

39.     Charles Akins consented to the surrender of thirteen of the dogs chained up on his property. The remaining two dogs that were not surrendered are the Defendant Dogs in the instant action.

---

[1] Although federal agents observed numerous large and heavy chains indicative of dog fighting on the property, they only seized one chain for evidentiary purposes.

40.     Since the seizure, all dogs seized from the property (including the Defendant Dogs), have again been evaluated by veterinarians. Of the fifteen dogs seized from the property, all tested positive for hookworms, six tested positive for whipworm, and one tested positive for roundworm. The two Defendant dogs both tested positive for hookworms and whipworm.  Twelve dogs were heartworm positive, including both Defendant Dogs.

41.     Upon examination by veterinarians, all of the dogs seized exhibited scarring on various portions of their bodies, including mouth, lips, ears, neck, front legs, hind quarters, and tail.  Some of the dog had signs of recent wounds, in addition to scarring. Defendant Dog, USM-732, had scarring on his ears and right front leg. Defendant Dog, USM-733 had scarring on his neck, left ear, and left hindquarter, as well as a recent wound on his tail.

42.     According to these facts, the Government has reason to believe that the two Defendant Dogs, USM-732 and USM-733, are subject to forfeiture under 7 U.S.C. §2156(f) because they were involved in an animal fighting venture.

## **PRAYER**

WHEREFORE, the United States of America prays that process of a Warrant for Arrest and Notice *In Rem* be issued for the arrest of the Defendants *in rem*; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the Defendants *in rem* be forfeited to the United States of America for disposition according to law; that the Court enter a judgment for costs associated with the care of the Defendants *in rem* pursuant to 7

U.S.C. § 2156(e) should any interested party file a claim for the Defendants *in rem*; and that the United States of America be granted such other relief as this Court may deem just and proper.

      This 4th day of April, 2022.

                                       Respectfully submitted,

                                       BRANDON B. BROWN
                                       UNITED STATES ATTORNEY

                                       ***/s/ Shannon T. Brown***
                                       _____
                                         Shannon T. Brown
                                         Assistant United States Attorney
                                         Louisiana Bar Number 32366
                                         300 Fannin Street, Suite 3201
                                         Shreveport, Louisiana 71101
                                         (318) 676-3600

## VERIFICATION OF COMPLAINT FOR FORFEITURE *IN REM*

I, Special Agent Raquel Mobley, with the United States Federal Bureau of Investigation, have read the foregoing Complaint for Forfeiture *in Rem* in this action and state that its contents are true and correct to the best of my knowledge and belief.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

This 31 day of March, 2022.

RAQUEL MOBLEY
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION